Addison Waite *vs.* John T. Woodward & others.

It is competent for selectmen, although not their duty, to add the name of a legal voter to the voters' list, after the voting commences; but they cannot, during such time, hold a regular meeting for the correction of the list.

Action on the case against the selectmen of Hubbard-ston, for wrongfully refusing to place the plaintiff's name upon the list of voters in said town, and refusing to admit him to vote, at the annual election in November, 1850, and at the election of a representative in congress in January, 1851.

The plaintiff offered to show that the defendants, after the opening of said meetings, and the list of voters had been read, made proclamation that all persons who claimed a right to vote, and whose names had not been inserted upon the list of voters, might come forward, and the selectmen would hear and decide upon their claims: That at the town meeting in January, the plaintiff did go to the selectmen before the voting began, and as soon as the proclamation was made, and requested to have his name inserted on the list, and offered proofs of his qualification: That the selectmen of Hubbard-ston have uniformly, for many years, heard and examined the claims of persons claiming a right to vote, and have acted upon the same, and when found qualified, have placed their names upon the lists of voters after the meetings had been opened, and after they had begun to receive votes: That at both elections, the defendants adopted that course in respect to other persons than the plaintiff, and placed their names on the list, and allowed them to vote at the first meeting, both before and after the plaintiff made his application, and at the second meeting after he had made his application to them. That at the times mentioned in the plaintiff's declaration the plaintiff made a claim upon defendants that they should place his name upon the list of voters, and that he might be admitted to vote, that they consented to hear his claim, and the proofs he offered, that they heard the same and adjudged thereon, and wrongfully refused his application aforesaid.

But the presiding judge of the court of common pleas,

*Merrick*, J. refused to admit the evidence, and ruled that the proposed evidence would not, if true, sustain the action, and that it was not competent for selectmen to enter names upon the list of voters after the opening of the meeting. Whereupon a verdict was taken for the defendants and the plaintiff excepted to the ruling.

*E. Washburn*, for the plaintiff.

*B. F. Thomas & G. Swan*, for the defendants.

CUSHING, J. This record presents but one question for our determination, namely, whether the court below ruled correctly in saying that it was not competent for selectmen to admit names on the voting list after the opening of the meeting, that is, pending the election.

It is a question of the true construction of the provisions of the Rev. Sts. c. 3 & 4, and of the statute of 1839, *c.* 42, and especially the following paragraphs:

" The selectmen shall be in session, at some convenient place, for a reasonable time, within forty eight hours next preceding all meetings for the elections of any of the officers aforesaid, for the purpose of receiving evidence of the qualifications of persons, claiming a right to vote in such elections, and of correcting the lists of voters ; and such session shall be holden for one hour at least, on the day of such election, and before the opening of the meeting.

" In any town, where the number of qualified voters shall exceed one thousand, such session of the selectmen shall be holden on the day immediately preceding the meeting, and, for as much longer time, previous to said day, as the selectmen shall judge necessary for the purpose aforesaid."

We agree at once that the statute does not make it the duty of the selectmen of a town to hold a selectmen's meeting, for the purpose of receiving evidence of the qualifications of voters, after the opening of the polls for the given election. Nor does the reason of the thing allow us to come to any other conclusion. After the voting has commenced, the selectmen are sufficiently occupied with their specific duty of the time, as presiding officers at the election and canvassers of the votes. Of course, it cannot be the right of any person to

demand of the selectmen then to hold a meeting for the purpose of correcting the voting lists in his favor. He might have applied at the time which the statute points out, that is, before the commencement of the town meeting.

The conclusion implies, and the argument of convenience goes the length of showing, that it is not the right of the selectmen, after the opening of the town meeting, to hold a regular judicial meeting of their own for the general purpose of hearing and determining applications for the correction of the poll lists.

These opinions are confirmed by the reasoning of the court in the case of *Capen* v. *Foster*, 12 Pick. 492, and are not contradicted by any thing in the subsequent cases of *Gates* v. *Neal*, 23 Pick. 308, and *Blanchard* v. *Stearns*, 5 Met. 302.

But we have heretofore decided that selectmen have authority, even after the opening of the town meeting, to strike from the list of voters the name of a person, who is not a legal voter. *Humphrey* v. *Kingman*, 5 Met. 162. And we have also decided that selectmen may add a name after the close of their stated meeting for the correction of the lists, though in anticipation of the town meeting. *Bacon* v. *Benchley*, 2 Cush. 100. We feel constrained to think that they have the power to do this, that is, to correct manifest error which may come to their knowledge, either by expunging a name, or adding one, as justice may require, even after the opening of the town meeting.

While, therefore, we think it is not competent for the selectmen to hold a regular meeting for the purpose of correcting the lists after the opening of the town meeting, yet we are unable to see any thing in the statute, which renders it incompetent for them, on their official responsibility, to admit a name after that time ; their action in the premises, in such a contingency, being limited by the exigency of subordination to their paramount duty as the presiding officers of the meeting.

We speak of course in regard to towns only, without going into consideration here, of what the law may be in this respect.

in the very different case of cities, where, as they are or-ganized in this Commonwealth, the municipal officers, whose duty it is to correct the voting lists, are not inspectors of the election.

Upon this view of the subject, a new trial is granted, to take place in this court. *Exceptions sustained.*